THE FITZ SIMONS & CONNELL COMPANY

*v.*

BRAUN & FITTS.

*Opinion filed October 25, 1902—Rehearing denied December 3, 1902.*

1. EXPLOSIVES—*liability of party using explosives in excavating a tunnel.* A public contractor who uses dynamite in excavating a tunnel at a place where such use is not necessary or permitted by the contract with the city, is liable for injury done to the buildings in the neighborhood from the concussion or vibration of the explosions, however great the care used in the work.

2. SAME—*courts will take judicial notice that use of dynamite in city is dangerous.* Courts will take judicial notice that use of dynamite in excavating a tunnel in a populous city is dangerous.

3. DAMAGES—*liability for use of explosives not confined to actual invasion of property.* The liability for damages to property from the use of explosives is not confined to actual invasion of the property by rocks or other material being thrown thereon, but extends to damage done by the concussion or vibration of the earth or air.

4. SAME—*measure of damages in action for damage to building from use of dynamite.* In an action for damages for injury to plaintiff's building caused by the defendant's use of dynamite in excavating a tunnel, the true measure of damages is the cost of repairing the building and restoring it to its proper condition.

*FitzSimons & Connell Co.* v. *Braun & Fitts,* 94 Ill. App. 533, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. AXEL CHYTRAUS, Judge, presiding. .

MEEK, MEEK, COCHRANE & MUNSELL, (L. C. COLLINS, and WILLIAM M. FLETCHER, of counsel,) for appellant.

MORAN, MAYER & MEYER, (T. A. MORAN, of counsel,) for appellees.

Mr. JUSTICE BOGGS delivered the opinion of the court:

This is an appeal from the judgment of the Appellate Court for the First District affirming the judgment entered in the superior court of Cook county in favor of

the appellees, against the appellant company, in the sum of $2750. The declaration was in trespass on the case, and, in substance, alleged that the appellant company and the city of Chicago, in the prosecution of the work of constructing a tunnel intended for the use of the city in supplying the inhabitants thereof with water, near, through or under certain premises belonging to the appellees, in excavating and digging the tunnel exploded heavy charges of dynamite, which so shook and jarred the foundations, walls and floors of the building, on the premises of appellees, and boilers, engines, machinery and fixtures in said building, that the foundations, walls and floors were made to sag, crack and separate, which greatly, permanently and irreparably impaired the appearance, strength and stability of the said foundations, walls and floors, and rendered said building less safe and useful and much less valuable to plaintiffs, and because said building was originally constructed with the intention and in such a manner that other and additional stories would and could be added to it, which said additions have been rendered impossible by such injuries to said building, as the foundations and walls are now, on account of the said injuries, too weak to sustain additional weight. Each of the defendants filed a plea of not guilty, and the cause was submitted to a jury for trial. During the hearing of the cause the same was dismissed as to the city of Chicago. Verdict in the sum of $2750 was returned and judgment entered thereon against the appellant company, and on appeal the judgment was affirmed by the Appellate Court.

The judgment should not be reversed because of any ruling of the court in connection with the testimony of the witness Harms or that of the witness Berrinson. The complaint, as framed by the appellant, is, that Harms, a witness for the appellees, was allowed to testify in regard to the effect of the explosions on his property, and that the appellant company was denied the right to

prove by the witness Berrinson that the explosions had no effect on his (Berrinson's) property. The contention of the appellees was, that their property was injured by the explosions in the months of August and September, 1896. Harms testified that he owned property adjoining that of the appellees, and that he had frequently been in the building of the appellees since it was erected; that the walls of the building were in good condition "down to the summer of 1896;" that he saw them in August and September, 1896, and saw cracks in the walls on the Union street side. He was then asked, "Did you, during the latter part of August and fore part of September, 1896,—were you disturbed by any noises there or did you hear any noises?" The witness then proceeded to tell that he had frequently heard explosions during those months, and spoke of one which he denominated "a heavy shot," and incidentally mentioned that the chimney fell from his building and that a picture fell from the wall, and that a few days afterwards he heard another shot, and he went over to his building and found that his tenants were moving out; that he looked up at the factory of the appellees and saw a crack opening in the wall of their building from the second story upward. The question was not propounded to Harms for the purpose of showing the injury to his building, but for the purpose of showing that the walls of appellees' building were cracked and broken by the explosions in the tunnel. The witness volunteered the statements as to the damage that resulted to his buildings, and on a motion of counsel for the appellant company that portion of his testimony relating to the tenants moving out of his building was stricken out by order of the court. It appears counsel later moved the court to strike out all the answer generally, and that no ruling was made on the motion. Counsel for appellant then cross-examined the witness and brought out other details, which counsel for the city, then a co-defendant with appellant, moved the court to

strike out. The court granted the motion. Thus it appears the court ordered stricken out all irrelevant matter to which its attention was specifically called. The answer of the witness Harms was in part proper, and the motion to strike out the entire answer, which was not ruled upon, should have been denied. This testimony furnished no reason for the admission of the testimony of the witness Berrinson, to the effect, as counsel stated it would be, that the tunnel passed directly under the building of the witness, and that his building sustained no damage whatever by reason of the explosions in the tunnel. That other buildings at various distances from that of the appellees were not injured would not be competent, and would tend to introduce collateral issues likely to mislead and confuse the jury.

The remaining assignments of error present for decision the correctness of the rulings of the court in giving and refusing instructions. We need not set forth in full the instructions with relation to the liability of the appellant company for any injury or damage resulting from the use of dynamite. They announced, in substance, the proposition that one who makes use of an explosive in the ground near the property of another, when the natural and probable, though not the inevitable, result of the explosion is injury to such property of the other, is liable for the resulting injury, however high a degree of care or skill may have been exercised in making use of the explosive.

The evidence disclosed that appellant was engaged in constructing a tunnel under contract with the city of Chicago. The contract forbade the use of explosives except where the excavation was in rock. The tunnel was of the depth of about ninety feet beneath the surface of the ground, and passed within a few feet of the corner of appellees' building. The appellant company used dynamite in excavating that portion of the tunnel, and the evidence showed that the explosions of the dynamite

caused the earth upon which appellees' building stood, to shake and vibrate, and that the walls of appellees' building were cracked and injured because of the explosions. The excavation at the time of the explosions in question was not in rock, but in indurated clay, with some gravel and boulders embedded in it. It was clearly shown the excavation through the clay and gravel might have been effected without the use of explosives, but that it could be more cheaply done with the aid of dynamite. As before said, however, the contract with the city forbade the use of explosives except where the excavation was in rock.

The performance of the work of excavating the tunnel underneath the buildings of a populous city with dynamite was intrinsically dangerous, no matter how carefully and skillfully the explosions were conducted. The nature and power of dynamite as an explosive have been demonstrated by universal experience, and it is a matter of common knowledge that the use of dynamite as an explosive is intrinsically dangerous, and of this the courts will take judicial notice. (17 Am. & Eng. Ency. of Law,— 2d ed.—909; *Norwalk Gaslight Co.* v. *Norwalk*, 63 Conn. 527.) In some jurisdictions, notably New York and New Jersey, it has been held that one who discharges blasts upon ground where he has the lawful right to blast, if he exercises due care in the process and manner of handling the explosive, is not liable for an injury to adjacent property caused by the mere disturbance of the earth or air, if no substance is thrown upon the premises so as to constitute a physical invasion of it. In New York (*Benner* v. *Atlantic Dredging Co.* 134 N.Y. 156,) and Massachusetts (*Murphy* v. *City of Lowell*, 128 Mass. 396,) the rule was announced that in the construction of public works, as by the general government or by cities, the contractors with government or the municipal authorities could not be held liable for the vibrations caused by explosions, in the absence of proof of want of care in the performance

of the work.   But a different rule obtains in other juris-
dictions.  In California the opposing doctrine was stated
in *Colton* v. *Onderdonk*, 69 Cal. 155, thus: "The fact that
the defendant used quantities of gunpowder,—a violent
and dangerous explosive,—to blast out rocks upon his
own lot contiguous to another person's, situate in a large
city, must be taken as an unreasonable, unusual and un-
natural use of his own property, which no care or skill
in so doing can excuse him from being responsible to the
plaintiff for the damages he actually did to her dwelling
house as the natural and proximate result of his blast-
ing, for an act which in many cases is in itself lawful
becomes unlawful when by it damage has occurred to the
property of another; and it would make no material dif-
ference whether that damage, resulting proximately and
naturally from the act of blasting by the defendant, was
caused by rocks thrown against Mrs. Colton's dwelling
house, or by concussion of the air around it, which had
either damaged or entirely destroyed it.   The defendant
seems by his contention to claim that he had the right
to blast rocks with gunpowder on his own lot in San
Francisco even if he had shaken Mrs. Colton's house to
ruins, provided he used care and skill in so doing, and
although he ought to have known that by such act, which
was intrinsically dangerous, the damage would be the
necessary, probable or natural consequence; but in this
he is mistaken." The doctrine of this case was re-affirmed
by the same court in *Munroe* v. *Pacific Dredging Co.* 84
Cal. 515.

In *Bradford Co.* v. *St. Mary's Co.* 60 Ohio St. 560, the
injury resulting from an explosive was by concussion
or vibration—*i. e.*, consequential injury.   The Supreme
Court of Ohio said: "When the owner of a stone quarry,
by blasting with gunpowder, destroys the buildings of
an adjoining land owner, it is no defense to show that
ordinary care was exercised in the manner in which the
quarry was worked." In that case the ground of liability

invoked and asserted was the storing of nitro-glycerin upon the defendant's own premises, and the court, in affirming a liability without regard to any negligence in the manner of storing and without distinction as to direct or consequential injury, and because of the inherent dangers of storing it at all, based its conclusion, by analogy, upon the rule as to blasting as above quoted.

Mr. Thompson, in his Commentary on the Law of Negligence, (vol. 1, sec. 764,) says decisions can be collected responding to three propositions: (1) If by an explosion dirt or stones are thrown upon the property of the adjoining owner, injuring such property, such owner may recover damages irrespective of the question of negligence, since this is a trespass upon his property; (2) where the work of blasting is done in a situation where it is necessarily dangerous to the public, as in a thickly settled portion of a city, damages are recoverable without proof of negligence, for the reason that in such case the work itself is so inherently dangerous that the doing of it, no matter how carefully, is of itself negligence; (3) liability will attach to the person carrying on the dangerous work where the work has been negligently done.

Though the law as to the liability arising in such instances does not seem to have been harmoniously declared in the courts of the different States to which we have referred, the rule in this jurisdiction was indicated by this court in the case of *City of Joliet* v. *Harwood*, 86 Ill. 110. In that case it appeared that it was necessary, in the construction of a public work, that blasting of rocks should be done in a public street of the city. The contractor used all due care, skill and caution in performing the work of blasting. A stone was thrown by the blast against a building of the plaintiff and injury thereby caused. Judgment was given against the city, and in affirming, we said: "In this case the work which the contractor was required by the city to do was intrinsically dangerous, however carefully or skillfully done.

The right of recovery in this case does not rest upon a charge of negligence on the part of the contractor. It rests upon the fact that the city caused work to be done which was intrinsically dangerous, the natural (though not the necessary) consequence of which was the injury to plaintiff's property. In such case the city is responsible." It is true that in that case there was an actual invasion of the property of the plaintiff, the explosion having precipitated a rock against his building; but liability for injuries caused by actual invasion of the property, or by the concussion or vibration of the earth or air, are within the doctrine there announced. If one who, for his own purposes and profit, undertakes to perform a work, by means of explosives, inherently dangerous to the property of another, should be held liable for an injury occasioned by any substance cast by the explosives on the property of such other, it is only by the merest subtility of reasoning he should be held not liable to respond for equal or greater damage caused by the concussion of the air or of the earth. There is no ground of substantial or practical distinction. The case of *Bradford Co.* v. *St. Mary's Co. supra*, may be regarded as authority for the view that liability in such cases is not restricted to an actual invasion of the property, but damages for consequential injuries may be recovered. The doctrine of the charge to the jury we think correct.

The instructions advised the jury to adopt as the measure of damages the cost of repairing the building so that it would be in as good condition as it was before it was damaged by the explosions. It is insisted the proper measure of damages was the depreciation in value of the property resulting from the injuries. We think the costs of repairing the building and restoring it to its proper condition was the true measure of the damages. It was so held in *Hide* v. *Thornborough*, 61 Eng. C. L. 250, and in *Shreves* v. *Stokes*, 8 B. Mon. 453, in which cases the injuries were occasioned by excavations made on ad-

joining lots to those on which the buildings injured were situate. Mr. Sutherland, in his work on Damages, (vol. 3, sec. 1018,) says: "And that valuation should be adopted which will be most beneficial to the injured party, for he is entitled to the benefit of the premises intact and to the value of any part separated. The damages for injury done to a house are measured by the cost of restoring it to its previous condition."

The judgment is affirmed.      *Judgment affirmed.*